A. Eric Bjorgum, State Bar No. 198392
Marc Karish, State Bar No. 205440
KARISH & BJORGUM, PC
510 W. 6th St., Suite 308
Los Angeles, CA  90014
Telephone: 213.785.8070
Facsimile: 213.995.5010
Email:eric.bjorgum@kb-ip.com

Attorneys for Plaintiff,
HARRIS REMODELING CO., LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRIS REMODELING CO., LLC, a California limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>JOHN DOES 1-10,<br><br><br>    Defendants. | Case No. CV10 4736 PSG PJWx<br><br>**COMPLAINT FOR:**<br><br>**1. TRADEMARK INFRINGEMENT (15 U.S.C. § 1114);**<br><br>**2. FALSE OR MISLEADING DESCRIPTIONS AND REPRESENTATIONS AND DILUTION (15 U.S.C. § 1125);**<br><br>**3. INFRINGEMENT OF CALIFORNIA AND COMMON LAW TRADEMARK (Cal. Bus. & Prof. Code §§ 14245 et seq.)**<br><br>**4. UNFAIRCOMPETITION AND BUSINESS PRACTICES (Cal. Bus. & Prof. Code § 17200)**<br><br>**5. INJURY TO BUSINESS REPUTATION AND DILUTION (Cal. Bus. & Prof. Code § 14247)** |

COMPLAINT

1

## COMPLAINT FOR DAMAGES
## AND DEMAND FOR JURY TRIAL

Plaintiff, HARRIS REMODELING CO., LLC, a California limited liability company, with its principal place of business in this District, (hereinafter referred to as "Harris"), by and through its undersigned counsel, hereby sues Defendants, JOHN DOES 1-10, individuals of unknown residence (hereinafter referred to as "Defendants" or "Defendant Does"), and states:

### PARTIES

1.     Plaintiff Harris is a California limited liability company with its principal place of business in Glendale, California.

2.     Defendant Does are unknown individuals who, on information and belief, reside in the United States.

### JURISDICTION AND VENUE

3.     This action arises under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., including more particularly 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c), as well as the statutory and common law of the State of California.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, and 1338(a) and (b), and supplemental jurisdiction under 28 U.S.C. § 1367(a).

4.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)-(c). On information and belief, the infringing marks that are the subject of this litigation were displayed in the Central District of California; the claims alleged in this action arose in the Central District of California; and the Defendants are corporations, individuals or unknown business entities based in the Central District of California or doing business here by making actionable misrepresentations and shipping, selling or offering goods or services under the infringing mark in the Central District of California.

1

2                          **COMMON ALLEGATIONS**

3          5.      Plaintiff is in the business of selling and licensing humor books and

4   items or rights related to those books.  Plaintiff's principal place of business is in

5   Burbank, California.  Barry Marder ("Marder") is the individual primarily

6   responsible for creating the works in which Plaintiff deals.

7          6.      Marder has been a standup comic and humor writer for over 30 years.

8   He is closely associated with Jerry Seinfeld.  He was a writer on the *Seinfeld*

9   television show.  He was a credited writer on the full feature animated film *Bee*

10  *Movie*.

11         7.      Beginning in approximately December, 1995, Marder began to write

12  books under the pseudonym "Ted L. Nancy."  The books were part of a series

13  entitled <u>Letters from a Nut</u> ("<u>Letters</u>").  The books all portrayed a common

14  scenario:  Ted L. Nancy would send humorous and sometimes absurd letters to

15  companies and celebrities.  If the companies wrote return letters, the series of

16  letters would be considered for the book.  For instance, in one letter, Nancy wrote

17  to the Disneyland Hotel requesting to check in to the hotel with his own ice

18  machine.  This created an exchange of humorous missives.

19         8.      The idea for the <u>Letters</u> books originated with Marder.  Marder also

20  created the character of Ted L. Nancy.  To obtain publication, he procured the

21  involvement of top literary agent Dan Strone, formerly of The William Morris

22  Agency and now of Trident Media Group.

23         9.      Initially, the intent was to involve another comic, Bruce Baum

24  ("Baum"), with the <u>Letters</u> material.  Baum had some connections in television,

25  and Marder initially approached him because Marder contemplated short videos

26  with the Ted L. Nancy character.  When the book deal was made, Baum was

27  supposed to work equally.  Unfortunately, for a variety of reasons explained

28  herein, the relationship soured.

1      10.    In June, 1997, the first Letters book was released.  Prior to its release,

2  Marder secured the endorsement of Jerry Seinfeld ("Seinfeld").  Seinfeld agreed to

3  write an Introduction to the book.  Because Seinfeld lends his name or

4  endorsement to very few projects, speculation soon arose that Ted L. Nancy was in

5  fact a pseudonym for Seinfeld.  Such speculation continues to be rampant and

6  drives the long-term sales of the Letters books, which have never gone into mass

7  market paperback release.

8      11.    The first Letters book was and remains a success.  It sold over

9  450,000 copies in hardcover and hundreds of thousands more in a Scholastic

10  version.  Foreign sales have been strong.   All of these versions featured Seinfeld's

11  name.  Seinfeld procured further exposure for the book, which he promoted the

12  book on *Larry King Live* and *The Tonight Show with Jay Leno,* exposing the book

13  to millions of viewers.

14      12.    In April, 1998, Bantam books published More Letters From a Nut.

15  Seinfeld again wrote a "More Introduction" section.  It sold over 100,000 copies in

16  domestic hardcover and has been released in foreign markets.

17      13.    In 2000, the third Letters book, Extra Nutty!  Even More Letters From

18  A Nut was published by St. Martin's, with a "Backword" by Seinfeld.  It has also

19  been published by Scholastic Books.

20      14.    Despite these successes, working with Baum was difficult for Marder.

21  Baum was traveling as a comic and not available to work consistently.  Nor were

22  his contributions up to the quality required by Marder.   Of the three books in the

23  initial Letters series, Baum's role declined with each book.

24      15.    Ultimately, Baum and Marder disagreed and ended up in litigation.

25  The litigation related to another book, entitled Stories from a Moron, by Ed Broth.

26  This book featured correspondence regarding short stories submitted to magazines.

27  That book also featured a Foreword by Seinfeld.

28

16. Baum apparently felt he had some rights to that book and filed a breach of contract suit against Marder. Marder counterclaimed. After one deposition, and despite the fact that Baum was the plaintiff, Baum settled on terms favorable for Marder.

17. The general result of the litigation was that Marder received all of the intellectual property rights associated with the <u>Letters</u> books, including copyright and trademark rights. Baum continues to receive some royalties on the books (to date in excess of $500,000), but he has no input on licensing or use of the books. Baum has profited from the association with Seinfeld. Currently, he has a very limited right to identify himself as a co-creator of the character Ted L. Nancy and as a co-author of the first three books only.

18. Since the settlement, Marder filed for a trademark registration on TED L. NANCY. The registration was granted and bears registration number 3,540,770. Specifically, the registration is for TED L. NANCY in connection with "books in the field of humorous exchanges of letters; humor books; book covers."

19. The association with Seinfeld and the mystery behind the identity of Ted L. Nancy are features of the goodwill associated with the TED L. NANCY mark and name. The public has come to associate genuine, authorized TED L. NANCY products and services with attributes similar to those of Seinfeld, to wit: the high quality observational comedy that is appropriate for many audiences, with no derogatory or sexually explicit content.

20. In addition, the TED L. NANCY mark continues to accumulate common law trademark rights. In 2008, Marder published another TED L. NANCY book (<u>Hello Junk Mail!</u>) with The National Lampoon.

21.     A fourth <u>Letters</u> book—the first in over a decade and entitled <u>All New</u> <u>Letters from a Nut</u> -- will be released later this year.  On information and belief, in anticipation of this release, there has been increased incidence of attempts to confuse the public as to the identity of Ted L. Nancy and siphon off the considerable goodwill of the TED L. NANCY mark.

22.     In related developments, Baum has skirted the line on what is appropriate under the settlement agreement (the "Agreement") in the first matter. Essentially, the Agreement transferred the TED L. NANCY works and franchise entirely to their creator, Marder.  Baum was left with only the limited right to identify himself as a co-author on the first three books, and to identify himself as a co-creator of the character Ted L. Nancy.  Given Baum's contributions, these rights were generous.

23.     Nevertheless, Baum has created the inference that he is solely responsible for the <u>Letters</u> books.  For instance, when Marder published <u>Hello Junk</u> <u>Mail!,</u> Baum's attorney sent letters making demands for credit that were not within the scope of the Agreement.

24.     In statements made to the press, Baum has claimed that the mystery of the <u>Letters</u> books had "run its course" and that the publisher allowed him to identify himself as a co-author of <u>Letters.</u>  Baum implied the involvement of Seinfeld was marketing ploy.  On information and belief, press clippings have been sent to celebrity websites and Seinfeld websites.

25.     On information and belief, in multiple interviews and postings on the Internet, Baum has written statements that imply he has some ownership or authority with regard to <u>Letters</u> and the TED L. NANCY mark.

26.     Baum has stated that characters he has created include the "Chia Man, Dimples the Cow and of course, Ted L. Nancy," as though it is a known fact that Baum is the creator of this character.  He has identified himself as "AKA Ted L. Nancy" while also stating that Seinfeld is not involved. These statements are

1 | difficult to remove from the Internet.

2 |     27.    These statements are often made in the disjunctive.  The

3 | misrepresentation is that, historically, it has been believed that Ted L. Nancy is

4 | either Jerry Seinfeld or someone else.  Baum denies that Ted L. Nancy is Seinfeld

5 | while simultaneously announcing his own involvement, thus creating the

6 | misimpression that Baum is the "someone else," and the only "someone else."

7 | Baum does not mention Marder, even though Marder came to Baum with the idea,

8 | wrote the overwhelmingly vast majority of these books, secured Seinfeld and

9 | Strone, and essentially got the books published without Baum.

10 |     28.    In addition, Baum started an online comedy site wherein he touted his

11 | connection to Letters from a Nut and offers memberships to his "Nut Club,"

12 | which mentions "exposed nuts" and "big nuts."  His online site is full of vulgar

13 | comedy and offers to sell and promote material from other comics.  These

14 | products are in contrast to the wholesome image of Ted L. Nancy.  In fact, Ted L.

15 | Nancy receives an extraordinary amount of letters from school children each year.

16 | The Letters books are used to teach children how to write business letters.

17 | Examples of recent letters from children are attached hereto as Exhibit A.

18 |     29.    In a rather bizarre episode, Baum made a homemade video of himself

19 | with a supposed "gift clock" that he made for Seinfeld and his own promotional

20 | comic book, and he forwarded the video, along with an email message, to Seinfeld

21 | and Seinfeld's manager.  In the video, he shows a clock made from a Letters book.

22 | He states that he gave the clock to Marder as a gift for Seinfeld, but that Marder

23 | must have kept it because Marder has claims that Baum never thanked Seinfeld.

24 | The note accompanying the video stated that Marder is an obsessive who has put

25 | Baum and his family in danger, threatening Baum.  It is further implied that

26 | Seinfeld and Marder employ mob-style justice, even though Baum supposedly

27 | worked with the "dangerous" Marder without incident. Baum knew or should have

28 | known that those communications would have gone to Seinfeld's manager and

1   employees, all of whom were exposed to slanderous allegations regarding Marder.

2       30.    This communication was accompanied by a declaration from another

3   comic who had met with Marder to discuss Baum.  The declaration also painted

4   Marder in a negative light, as a shady figure who could "take Baum out."  This is

5   ridiculous, given that Baum was a college football player, and Marder suffers a

6   variety of health problems, including recovering from a heart attack suffered ten

7   years ago.

8       31.    Further, "mistakenly" attached to this email were notes of Marder's

9   alleged improprieties to Baum.  This list is long and detailed, accusing Marder of

10  slander and generally displaying a disturbing conspiracy theory-like scenario with

11  Marder at the center of a plot to ruin Baum.  Baum has made statements such as

12  that Marder has damaged Baum in meetings, stole his work and has no original

13  ideas.  Nothing could be further from truth.  The fact that Baum sued Marder yet

14  Marder walked away with all of the intellectual property rights speaks volumes

15  about the reality of this situation.  Indeed, this list was sent to Seinfeld's manager,

16  publicist and assistant three years after the litigation was resolved.

17      32.    Concurrently with these disturbing developments, so-called "natural

18  search" results on Amazon.com have been turning up links to Bruce Baum's DVD

19  "You Can't Tell A DVD By Its Cover" when searching for Letters from a Nut  by

20  Ted L. Nancy or the All New Letters from a Nut  book (in which Baum has no

21  rights whatsoever).  That DVD contains multiple vulgar and "blue" skits and

22  routines.

23      33.    One of Baum's skits includes a four minute video is filled with every

24  gay slur and derogatory descriptive gay sexual act imaginable.

25      34.    Another video shows a product called "Britney Spears White Trash

26  Can," filled with explicit word play and references to Britney Spears' alleged

27  promiscuity.

28

35.   When searching for Letters from a Nut on Amazon.com, clicking on the "related search" of "Bruce Baum you can't tell a dvd by its cover" leads the consumer to all of the Letters books—not to the DVD. This creates the false impression that Baum is the author of all of the books, when in fact, he is not, and has no rights to identify himself at all in regard to All New Letters from a Nut or Hello Junk Mail! Searches for "Ted L. Nancy" on Amazon.com turn up suggested links to Baum, and searches for "Bruce Baum" on Amazon.com result in all of the Letters books appearing.  This tends to disassociate Seinfeld with the books and drives away customers looking for Seinfeld-related products.  It also affects Marder's ability to capitalize on his hard work, as a false impression is created that he is not associated at all with the books.

36.   Further, given that Baum has some limited rights in regard to some of the books, care must be taken under the so-called "safe distance" rule to insure that consumers are not confused.  Searches for Letters should be turning up Marder or Seinfeld.  Marder owns <www.tedlnancy.com >.  Seinfeld is obviously very famous and is closely associated with the books, and his name is on the books.  Yet neither Marder nor Seinfeld appears as "related" searches on Amazon.com.  Baum appears even though his name is not anywhere on the books.

37.   Representatives for Harris and Marder wrote to Amazon to attempt to stop this confusion and/ or seek disclaimers.  Two letters went unanswered.  Marder himself wrote to Amazon and spoke with a representative who told him there is nothing that can be done.  However, when a similar letter was sent to the website Funny or Die, that site was able to quash the association with Baum within one day, so that children looking for Letters or TED L. NANCY would not be exposed to sexual humor.

38.   The Amazon.com representative stated to Marder that someone must be searching Baum and Letters in order to create an inappropriate link between the two.  The representative did not indicate who was engaging in such searches.

37.    Defendant Does are believed to be behind the utilization of web optimization techniques that are siphoning off the goodwill of the TED L. NANCY mark and degrading and diluting the TED L. NANCY mark via an association with inappropriate humor.

38.    On information and belief, Defendant Does have altered the TED L. NANCY Wikipedia page to take out references to Marder.  A trademark site, <trademarkia.com>, has featured photographs of Baum and created other misleading associations with the TED L. NANCY mark.  A search for TED L. NANCNY on the comedy site "Funny Or Die" resulted in Bruce Baum's profile and picture appearing.  On information and belief, the Defendant Does are responsible for this confusion.

39.    Substantial amounts of capital have been invested by Plaintiff to accomplish its business ends and to promote the TED L. NANCY mark.  Plaintiff or its agents have drafted numerous cease and desist letters to those who improperly use the TED L. NANCY mark.  Plaintiff maintains an official Ted L. Nancy website with authorized book excerpts and new writings.

40.    With the pending publication of the fourth <u>Letters</u> book, Random House is scheduling extensive publicity.  On information and belief, Seinfeld is scheduled to appear alongside representatives and agents of Plaintiff Harris.

41.    On information and belief, Seinfeld will write the Introduction for the new <u>Letters</u> book.

42.    None of the Defendants to this action is licensed or otherwise authorized by Plaintiff to utilize any trademarks, goodwill or writing associated with TED L. NANCY.

## FIRST CAUSE OF ACTION

### (Trademark Infringement -15 U.S.C. § 1114(1) Against All Defendants)

43.     Plaintiff repeats and realleges the allegations of paragraphs 1 – 42, above.

44.     Defendants are selling, distributing, and/or offering for sale products or services covered by Plaintiff's registered mark.  Plaintiff has not authorized, or consented to, Defendants' use of the TED L. NANCY mark.

45.     Defendants' conduct constitutes trademark infringement under 15 U.S.C. § 1114(1).  Moreover, Defendants' conduct is likely to cause confusion, deception and mistake among the consuming public in that members of the public who view or purchase Defendants' goods or services used with Plaintiff's registered marks are likely to believe that there is an association between the Defendants and/or the Defendants' products and services, on one hand, and Plaintiff's products and services on the other.

46.     Defendants' trademark infringement without the authority of Plaintiff will cause injury to Plaintiff and its marks, goodwill and reputation, for which Plaintiff has no adequate remedy at law.  Unless Defendants are restrained by this Court from continuing their trademark infringement, these injuries will continue to occur.

## SECOND CAUSE OF ACTION

### (False or Misleading Descriptions and Representations and Dilution -- 15 U.S.C. § 1125(a) Against All Defendants)

47.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 46, above, as though fully set forth at length.

48.     Plaintiff or its predecessors have used the TED L. NANCY mark in interstate commerce since at least as early as 1997, long before any use by

1   Defendant Does.  Plaintiff has extensively advertised, promoted, and sold products

2   and services throughout the United States under the TED L. NANCY marks.  The

3   public has come to identify Plaintiff as the exclusive source of goods and services

4   bearing the TED L. NANCY mark.  The TED L. NANCY mark has become

5   famous, has acquired secondary meaning, and has come to represent a valuable

6   business asset belonging exclusively to Plaintiff or its predecessors.

7        49.   Defendants have used words, terms, symbols or devices or

8   combinations thereof that have, on information and belief,  resulted in false

9   designations of origin, false and misleading representations and descriptions of fact

10  that have:

11

12       a.   caused or are likely to cause confusion, mistake and deception

13      as to the affiliation, connection and association of Defendants with the TED

14      L. NANCY mark and line of goods, and as to the origin, sponsorship and

15      approval of Defendants' goods and services; and

16       b.   misrepresented, in commercial dealings, the nature,

17      characteristics, qualities and origin of Defendants' goods and services.

18       50.   Defendants have made and will continue to make false representations

19  regarding Defendants' goods and services, the alleged affiliation between

20  Defendants and Harris, Marder and/or the TED L. NANCY line of goods and

21  services, and such other misrepresentations as averred herein.

22       51.   Defendants' activities as averred herein have constituted a use in

23  commerce of the TED L. NANCY mark, which use began after the TED L.

24  NANCY mark became distinctive and famous.

25       52.   Defendants' activities as averred herein have caused and will continue

26  to cause actual dilution of the TED L. NANCY mark if not enjoined.

27       53.   Defendants' activities as averred herein have caused and will continue

28  to cause, unless retrained, great public harm to Plaintiff  through (a) a likelihood of

confusion, mistake and deception among the purchasing public as to Defendants' infringing web activities; (b) the loss of valuable goodwill and business reputation symbolized by the TED L. NANCY mark; and (c) actual dilution of the famous TED L. NANCY mark via association with scandalous matter.  All of this activity has been in violation of section 43(a) of the Lanham Act.

54.    Defendants' use of the TED L. NANCY mark has been willful and malicious and without the consent, permission, or authorization of Plaintiff.

55.    Plaintiff has suffered and will continue to suffer loss of profits and other damage, and Defendants have earned illegal profits, in an amount to be proven at trial, as the result of Defendants' aforesaid acts.  Such damages and profits should be trebled in accordance with 15 U.S.C. § 1117.

56.    Plaintiff has no adequate remedy at law.

### THIRD CAUSE OF ACTION

### (Infringement of California and Common Law Trademarks – Cal. Bus. & Prof. Code § 14245 et seq. Against All Defendants)

57.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 56, above, as though fully set forth at length.

58.    Defendants' use of the TED L. NANCY mark in connection with Amazon.com and other websites is likely to cause confusion, mistake, deception and uncertainty in the mind of the public in violation of California trademark law, including Cal. Bus. & Prof. Code § 142450 et seq.

59.    Defendants' conduct as described herein has been without Plaintiff's permission, consent or authorization.

60.    Defendants' conduct evidences fraud, oppression and malice in that Defendants' conduct was intended to cause injury to the Plaintiff, is despicable and was carried out with willful and conscious disregard of the rights of Plaintiff and

the public.  By reason of the foregoing, Plaintiff is entitled to exemplary and punitive damages.

## FOURTH CAUSE OF ACTION

### (Statutory Unfair Competition Against All Defendants -- Cal. Bus. & Prof. Code § 17200)

61.    Harris repeats and realleges the allegations contained in paragraphs 1 through 60 above.

62.    Defendants Doe's actions as described herein constitute unlawful, unfair or fraudulent business practices as those terms are defined in <u>Cal. Bus. & Prof. Code</u> § 17200.

63.    Harris is entitled to restitution or disgorgement of all profits gained by Defendant Does as a result of their unfair competition.  Harris is further entitled to an injunction against further unfair business practices, including but not limited to enjoining Defendant Does from posting any content on the Internet or creating false associations between Ted L. Nancy and anyone except Seinfeld, Harris or Marder.

## FIFTH CAUSE OF ACTION

### (Injury to Business Reputation and Dilution Against All Defendants – Cal. Bus. & Prof. Code  § 14247)

64.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 63, above, as though fully set forth at length.

65.    Defendants' use of colorable copies or imitations of Plaintiff's mark are likely to cause injury to Plaintiff's business reputation and to dilute the distinctive quality of the TED L. NANCY mark in violation of California trademark law, including Cal. Bus. & Prof. Code § 14247 and California common law.

66.     Defendants' acts have caused, and unless restrained by this Court will continue to cause, Plaintiff and the public to suffer great and irreparable damages and injury.

67.     Plaintiff has suffered loss of profits and other damage, and Defendants have earned illegal profits in an amount to be proven at trial, as a result of Defendants' aforesaid acts.  Defendants have acted with oppression, fraud and/or malice.  By reason of the foregoing, Plaintiff is entitled to exemplary or punitive damages on the common law claims, in an amount to be proven at trial.

68.     Plaintiff has no adequate remedy at trial.

**WHEREFORE,** Harris prays for relief as follows:

1.      Preliminarily and permanently enjoining and restraining Defendants, their officers, directors, principals, agents, servants, employees, customers, successors and assigns, and all those in active concert or participation with them, from:

      a. Counterfeiting, imitating, copying, or making unauthorized use of the TED L. NANCY mark;

      b. Manufacturing, producing, printing, distributing, importing, trafficking in, selling, offering for sale, possessing, advertising, promoting, importing, or displaying any products or services bearing or associated with any simulation, reproduction, counterfeit, copy or colorable imitation of the TED L. NANCY mark;

      c. Using any false designation of origin or false description or misrepresentation, or performing any act, which is likely to cause confusion, deception, mistake to the public or trade, as to the affiliation, origin or association of Defendants' products or services with Plaintiff;

d. Diluting or infringing the rights of Plaintiff's rights in the TED L. NANCY mark, or otherwise damaging Plaintiff's goodwill or business reputation; and

e. Otherwise competing unfairly with Plaintiff in any way.

2.   Directing such other relief as the court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any product or service sold, distributed or otherwise circulated or promoted by Defendants, which did not originate with Plaintiff, is authorized by Plaintiff or related in any way to Plaintiff's products and services, such relief to include corrective advertising by Defendants or payment by Defendants to Plaintiff sufficient to enable Plaintiff to conduct corrective advertising, and such relief to further include notice of the injunction and court order to each of Plaintiff's and Defendants' customers.

3.   Awarding damages to Plaintiff and an accounting of the profits of Defendants arising from Defendants' infringement, false designation of origin, and unfair competition, such damages to be trebled in view of the willfulness of Defendants' acts.

4.   Awarding damages arising from Defendants' unfair competition and false representations, including Plaintiff's loss of sales and restitution for the unjust enrichment which Defendants have enjoyed.

5.   Awarding statutory damages under the Lanham Act.

6.   Imposing a constructive trust requiring Defendants to account for and pay over to Plaintiff all profits realized by them from their infringement and injury to the value of the TED L. NANCY mark and their unfair competition with Plaintiff.

7.   Awarding exemplary or punitive damages against Defendants.

8.   Awarding costs and reasonable attorneys' fees and expenses incurred by Plaintiff in connection with this action.

9.    Imposing a mandatory injunction requiring Defendants to issue appropriate press releases, disclaimers and Internet posts to remedy any confusion;

10.    Awarding pre-judgment interest and post-judgment interest as permissible; and

11.    Awarding such other relief as the Court deems proper under the circumstances.

Dated:   June 25, 2010                    KARISH & BJORGUM, PC

By: _____
A. Eric Bjorgum
Attorneys for Plaintiff
HARRIS REMODELING CO.. LLC

1

## **DEMAND FOR JURY TRIAL**

2   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Harris

3   Remodeling Co., LLC hereby demands a trial by jury of all issues.

4

5

6

7   DATED  June 25, 2010.

8

9

10                    A. Eric Bjorgum

11                    Attorneys for Plaintiff
                       Harris Remodeling Co., LLC
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

18

EXHIBIT A

Ted L Nancy
1413 1/2 Kenneth Rd. #193
Glendale, CA 91201 USA

91 201 81421

Ted Nancy
1413 ½ Kenneth Rd. #193
Glendale, CA 91201

Dear Ted Nancy,

     I have read some of your letters and a lot of them are so <u>funny</u>. I think it would be great if you could visit our school.

     My name is          and I go to              in

     . I wanted to see if you could come and talk to the whole school about your books. I could talk to my principal about you coming. I know my English teacher would love to hear your story on that book called <u>Letters from a Nut</u>, but if you can't come, I would like to talk to you through letters if you don't mind. One reason I would like you to come is because it could inspire students to write, and impacting a generation.

     Please let me know if you could come before this school year's over.

Dear Ted L Nacy,

my name is
and I am a 8th grader at
middle school in
I am writing to you because I was
wondering where you got your
inspiration to write all of those
letters to all those different place.

First of all, I was wondering
if you accually sent all of those letters
to every person or company, and
did you get every responce. Also
did you send more letters and just
not get responces to them I think
it would be awsome if you could
come to our school one day and
mabey you could read us some letters
that you sent out and didant get a responce
to them. I would love to see where
you get your inspiration. How many
different places did you send those
letters, including the ones that
you did not get a responce.

If you would send a letter back
that would be reey cool. Thank you
for reading this.

March 9th, 2010

Dear Ted L Nancy,

I'm a student in                    who is your

Biggest fan.  Firstly, I'd like to let you know that reading your book

Inspired me and I'm thinking of writing my own.  I'm writing this letter to ask for one

favor, I'd like you to write another book to motivate me in writing mine.

Additionally, reading *"A letter from a Nut"* was one of the best feelings I've ever

had.  My favorite was when you wrote a letter to the Hotel telling them about your

missing tooth, I must say that was quite impressive and hilarious.  Also, I'd like to say I

look up to you.

Another reason why I'd like you to write another book is, I love your sense of

humor and sense of urgency.  You writing a new book would mean a whole lot to me

and I'd however encourage everybody I know to read or buy a copy.

Pursuing this further, I think writing this new book would reconnect you to your

readers, like me.  Let's say for instance you do write the new book and it becomes the

best selling book in the United States, I bet that would be a very good feeling.

In conclusion, I'd like to thank you for taking your time to read my letter, I really

appreciate it.  On the other hand I'd like to know more about you.  Hope you consider

writing back.

Sincerely,

Dear Mr. Ted. L. Nancy,

Hello my name is                    and I am a
student at

.                I am in the 8th grade and I just now
really heard of you but I am glad I did, I find it
very interesting that you're an author that writes
letters and form them into a book. I never would
have come up with an idea such as turning letters
into a published book.    You are an inspiration to
me and I am sure you are to others as well. Have a
wonderful day and thanks for taking the time out
to read this. I really appreciate your time. :D

Sincerely,

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Philip S. Gutierrez and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV10- 4736 PSG (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)       NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address: .
A. Eric Bjorgum
KARISH & BJORGUM, PC
510 W. 6th St., Suite 308
Los Angeles, CA 90014

**ORIGINAL**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| HARRIS REMODELING CO., LLC,<br>a California limited liability company,<br><br>PLAINTIFF(S)<br><br>v.<br><br>JOHN DOES 1-10,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV10 4736 PSG PJWx**<br><br><br>**SUMMONS** |
|---|---|

TO:  DEFENDANT(S): <u>JOHN DOES 1-10,</u>

A lawsuit has been filed against you.

    Within   __21__   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>A. Eric Bjorgum, Karish & Bjorgum,   </u>, whose address is <u>510 W. 6th St., Suite 308, Los Angeles, CA 90014  213.785.8070                          </u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

**CHRISTOPHER POWERS**

Dated: _____ JUN 2 5 2010 _____       By: _____
                                                    Deputy Clerk

                                                *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                    SUMMONS

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) <br> Harris Remodeling Co., LLC | DEFENDANTS <br> John Does 1-10 |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br><br> A. Eric Bjorgum <br> KARISH & BJORGUM, PC, 510 W. 6th St., Suite 308, Los Angeles, CA 90014 <br> USA (213) 785-8070 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☑ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No     ☑ **MONEY DEMANDED IN COMPLAINT: $** According to proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., infringement and dilution of TED L. NANCY mark.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☑ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

# CV10 4736

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California, or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County / Unknown (Doe Defendants) | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date   4/25/2010

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969 (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |